Seeligson & Co. vs. A. Rigmaiden & Co.

## No. 1238.

### G. SEELIGSON & CO. VS. A. RIGMAIDEN & CO.

An order granted and signed by the clerk for an attachment to issue needs no seal.

A creditor who sues out an attachment solely on the ground that his debtor had given a mortgage to another creditor, and who is proved to have asked a mortgage for himself before the mortgage complained of was given cannot complain of an unfair preference and justify an attachment on that ground.

The damages awarded by a jury will not be disturbed when no substantial reason appears therefor.

APPEAL from the Fourteenth District Court, Parish of Calcasieu. *Reed*, J.

---

*Geo. H. Wells* for Plaintiffs and Appellants:

1. One who has acquiesced in the assessment of his property for taxes is estopped from claiming that it is worth more than its assessment, or that he owns more property than was assessed, when he sets up such claim, in his own interest, to recover damages for its alleged illegal seizure, unless he proves that his assessed property has increased in value since its assessment, and the amount of such increased value at the date of the seizure; or that the property not assessed was acquired by him since the assessment of his other property, and its amount and value at the date of the seizure.

2. Where one, by his words or conduct, wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his previous position, the former is estopped from afterwards averring against the latter the existence of a different state of things at the same time. 5 R. 523; 4 Ann. 293; 5 Ann. 368; 9 Ann. 528; 12 Ann. 473; 30 Ann. 50.

3. The seal of court is not required to orders of court, rendered by the clerk in the exercise of his judicial functions. It is required to the writs which he issues in execution of such orders. The words "orders or writs" in Art. 774, C. P., are there used synonomously, and mean only process of court, issued in execution of its orders. C. P. 625, 774.

4. When a clerk of court renders one of those judicial orders, the power to render which is conferred upon him by statute, he acts as a judge, *pro hac vice;* and such order is as much an order of court as if it had been rendered by the judge himself. 18 L. 482.

5. In a suit by attachment, on the sole ground that defendant has mortgaged, assigned or disposed of, his property, with an intent to give an unfair preference to some of his creditors, it is unnecessary to allege or prove that he has done so with intent to defraud his other creditors. The fourth clause of art. 240, C P., provides two causes of attachment, and makes an express distinction between such a mortgage or disposition of property with intent to defraud creditors, and such mortgage or disposition thereof with intent to give some creditors an 'unfair preference. To justify an attachment, however, on the sole ground of such unfair preference, the complaining creditor must show that he has been injured thereby.

6. A charge, under the fourth clause of art. 240, C. P., that a debtor has mortgaged, assigned or disposed of, his property, with intent to give some of his creditors unfair preference, does not necessarily involve a charge that he has done so with intent to defraud his other creditors.

7. On motion therefor, a mere clerical error or omission in a writ, should be amended, *nunc pro tunc*, even where it is proposed to amend an essential requisite of the writ. An omission or mistake in respect to the *seal* is a proper subject for amendment. 3 Tex. 261; 49 Tex 633; 3 Ala. 250; 2 Smedes & Marsh, 307; 1 Hill, 204. 2 Brock. 13; 9 Porter'

320; 5 Pick. 663; 20 Pick. 38; 18 Wend. 675; 19 Wend. 99, 304; 11 Verm. 331; 5 Blackf. 374.

8. Attorney's fees, for damages for alleged wrongful attachments, are recoverable only for attorneys' services relating exclusively to the attachment; and then only when they have been paid, or where there has been a contract to pay a specific amount therefor.

9. A claim in reconveniion, for damages for an alleged illegal seizure, must contain the same "clear and concise statement of the nature and object of the demand," as is required in a petition in a direct action; and where several injuries are alleged, there must be a specific amount of damages stated for each injury averred.

*A. R. Mitchell* and *F. A. Gallaugher* for Defendants and Appellees :

The] remedy by attachment is *stricti juris*, and cannot be extended to cases not coming within the obvious intendment of the law.

No extension of its scope can be permitted in consideration of equity, and the formalities prescribed are rigidly exacted on pain of nullity.   9 Ann., 586.

Clerks shall issue all orders or writs in the name of the State of Louisiana and from the court from which they issue, and shall seal them with the seal of the court, and sign them with their own names designating their quality as clerks   C. P. 774.

Every act whatever of man that causes damage to another, obliges him by whose fault it happens to repair it.  C. C. 2315.

Every person is responsible for the damage he occasions. not merely by his act, but by his negligence, his imprudence or his want of skill   C. C. 2316.

In order to maintain a writ of attachment under the fourth sub-division of art. 240 C. P., it must be shown that the debtor's purposes were fraudulent.   32 Ann., 341; 30 Ann., 304 ; 26 Ann., 641 ; 28 Ann., 819.

The intent to defraud is the essential ingredient, and the simple act of giving a mortgage to a creditor to secure his claim does not of itself constitute a ground for a writ of attachment.  28 Ann., 818.

Where defendant in an attachment reconvenes the allegation that plaintiffs, by their unlawful attachment of his goods. have damaged him in the amount of three thousand dollars, is sufficiently clear and certain to admit of evidence tending to show the amount of pecuniary loss suffered by him in his business by reason of the attachment. 32 Ann., 341.

The opinion of the Court was delivered by

MANNING, J.   The plaintiffs, a commercial firm of Galveston, sued the defendants, a firm of Lake Charles, for $2987.80 with interest from June 30, 1884, and attached their stock of goods.  The defendants moved to dissolve and claimed damages for the injury caused by the attachment, which having been referred to the merits the whole issue was tried by a jury who gave the plaintiffs judgment for their demand without interest and gave the defendants judgment for $3000 with interest, and the plaintiffs appeal.

One of the grounds of the motion to dissolve is that " the order of the clerk in granting the attachment is not sealed with the seal of the court as required by law."

It is seriously taken for it is renewed in the brief, and it was seriously received for the judge charged the jury that the seal was "essen-

tial to the validity of all orders of the clerk" and if they should find that its omission was not caused by plaintiffs and should dissolve the attachment on the ground alone of its omission, then they must not give damages.

There is no room for the supposition that the writ of attachment was confounded with the order for the issuing of the writ. The writ has the seal. There is no dispute about that, and the order does not need the seal. The writ goes into the sheriff's hands and the seal authenticates it, but the order does not go from the clerk's hands. The only significance of attaching the seal to it would be to assure himself that he had signed it and the law does not require such purposeless acts of any officer.

The other ground of the motion is that the facts and allegations of the attachment proceedings are untrue.

The sole ground for the attachment alleged is that the defendants had mortgaged a portion of their property to another creditor with intent to give him an unfair preference "thereby entitling the plaintiffs, says the petition, to an attachment." It turns out in the evidence that the plaintiffs had asked and even insisted on the defendants giving them a mortgage accompanied with an engagement to buy only from them, and the defendants refused to give it burdened with this onerous condition. They did not owe this other creditor as much as two hundred dollars but he agreed to let them have goods not to exceed a given sum at one time and the mortgage was given to secure this continuing credit. There was no concealment about it. The plaintiffs could have doubtless had the same arrangement but they demanded his exclusive trade in articles in their line. The defendants did not give the mortgage until after the plaintiffs had demanded one in their favour, and the refusal of the plaintiffs to credit them further was the cause of their application to the other creditor.

Notwithstanding this refusal and the termination of their business relations, the defendants continued to pay them the balance that was due. Their purchases of the plaintiffs had reached the sum of $27,000 and they had paid all but the balance now sued for. They paid $1500 or thereabouts after the plaintiffs had refused to credit them further. So far from exhibiting any desire or intention to defraud the plaintiffs or give any other creditor a preference over them, they evidenced the purpose to pay them as fast as possible and did unto their more obliging creditor only what the plaintiffs wanted should be done to them. The suggestion of a mortgage first came from the plaintiffs.

Burch vs. Sheriff et al.

The defendants' store was shut up under the attachment eleven days—their credit was seriously impaired—all their creditors came down upon them and they lost trade, credit, and profits.

We are urged to impute fraud to the defendants because their property was assessed lower than its value. That habit is chronic all over the land, but the plaintiffs were not hurt by it. They never regulated their credit to the defendants by the value they put on their property on the assessment roll. It did not form an element in the plaintiffs' estimate of what the defendants were really worth, and we cannot permit them to champion the State's interest in. appearance when their patriotism and public spirit serves only to ward off responsibility for damages occasioned by a rash and illegal act.

Both parties wish us to end their disputes and not send them back to another jury. We shall gratify them, but shall leave them where we find them. The verdict has very much the appearance of an attempt by the jury to balance accounts. The plaintiffs claim $2987. The jury give it to them and give the defendant $3000. We don't know that we could do any better in such a case as this. The jury however made the mistake of giving interest where it was not due and of withholding it when it was due and left out eighty seven dollars through a clerical error—mistakes which we correct.

It is therefore ordered that the judgment of the lower court is amended by substituting $2987 $\frac{80}{100}$ to that mentioned in the judgment as in favour of the plaintiffs and that the same bears five per cent per annum interest from June 30, 1884, and that the judgment in favour of the defendants so far as it allows interest on the same be stricken out, and that the defendants pay the costs of this appeal.