BRUNOT, J.
Nine suits were filed by the plaintiff in the district court of Webster parish, La., against various defendants, for different amounts. The cause of action and the pleadings in each suit are the same, and, except as above noted, the suits! are identical in all respects.
These suits were consolidated in the district court and tried together, hut, for some reason which is not disclosed by the r'ecord, two judgments were rendered, one in the Kelly Sneed Case and another in the cases of the eight other defendants. From these two judgments plaintiff took an appeal to the Court of Appeal, Second Circuit. That court heard the cases as one, and rendered its judgment accordingly. After a rehearing was refused by that court, this court, on the application of the plaintiff, ordered the record sent up for review. Shortly after this order was complied with, J. L. Longino, one of the appellees, through counsel, filed the following motion herein:
“The attorneys of J. L. Longino, respondent, with respect move and pray that the application for writ, of certiorari to have this case reviewed in this court, should be denied, and the order granted therefor revoked, as i+ in effect gives the appellant two appeals in the same case where only questions of fact are involved.”
There is coupled with said motion an answer to the appeal, in the alternative, in which respondent prays that the damages awarded to him by the lower court be in *435 creased to the full amount claimed in his pleadings, as plaintiff in reconvention.
Plaintiff is a nonresident corporation, authorized to do business in this state. It is engaged in the purchase of promissory notes secured by chattel mortgage on automobiles. The defendants purchased automobiles from the Reagan Motor Company, of Minden, La., a commercial partnership composed of J. L. Longino and T. T. Reagan. The cars were sold by this company for a small cash payment and notes, secured by chattel mortgage on them, were given to represent the balance of the purchase price. These notes were unconditionally indorsed by the Reagan Motor Company, and were transferred to the plaintiff. Plaintiff foreclosed on nine series of ■the notes secured by chattel mortgages. In its pleadings it asserts the vendor’s lien upon the mortgaged property; it makes the Reagan Motor Company and the individual members thereof parties defendant; it prays for a sequestration of the mortgaged automobiles ; for an attachment commanding the sheriffs of Webster, Natchitoches, and Bossier parishes to seize and take into their possession the property rights and credits of J. L. Longino, within their respective jurisdictions, sufficient to satisfy its claim, interest, cost, and attorney’s fees; and that the First National Bank, of Minden, be made garnishee. Finally, the prayer in each suit is for judgment against the mortgagor and against the Reagan Motor Company, and J. L. Longino and J. T. Reagan, individually and in solido, for the full amount claimed in the petition, with recognition of plaintiff’s vendor’s lien upon the property sequestered; for judgment maintaining the attachment, recognizing plaintiff’s lien and privilege resulting from the attachment and garnishment ; and ordering the sale of said property and the payment of the proceeds thereof to plaintiff by preference and priority over other creditors. There is a supplemental petition reciting that the Reagan Motor Company transferred all of its property and assets to the Waller Motor Company, of Minden, for a cash consideration, and praying for service thereof.
J. L. Longino moved to dismiss the writs of sequestration and attachment sued out by plaintiff for several reasons, viz. that the writs were premature; that the amounts for which the writs issued are not certain and definitely fixed; that the allegations of the petition are not sufficient basis for the issuance of the writs and the amount of the attachment bond is insufficient; that the allegations with reference to the necessity for the writs are untrue; and that plaintiff was in possession of the mortgaged property prior to and at the time the suit was filed. This defendant then, in reconvention, sets up claims for damages aggregating the sum of $50,000, for which he prays for judgment with legal interest thereon from March 5, 1927; for the dissolution of the writs of sequestration and attachment; and for fifteen hundred dollars as attorney’s fees for dissolving the writs. The cases were heard on these issues. The district judge, ad hoc, in the Kelly Sneed Case, rendered the following judgment:
“For the reasons assigned, it is ordered; adjudged and decreed that there be judgment in favor of J. L. Longino, plaintiff in motion, and against the General Motors Acceptance Corporation, defendant in motion, dissolving the writ of attachment herein sued out, at the cost of General Motors Acceptance Corporation, defendant in motion.
“It is further ordered, adjudged and decreed that there be judgment in favor of J. L. Longino, plaintiff in reconvention, and against the General Motors Acceptance Corporation, defendant in reconvention, in the full sum of One Thousand Five Hundred Dollars, with legal interest thereon from judicial demand until paid.” .
*437 The judgment in the other eight consolidated cases merely increases the allowance for attorney’s fees $250, and specifically maintains the writ of sequestration at the cost of J. L. Longino.
On appeal, the Court of Appeal only increased the allowance for attorney’s fees and dissolved the writ of sequestration quoad the defendant J. L. Longino.
While this latter ruling is correct, it is erroneously based upon the theory that the property sought to be sequestered was in the possession of the plaintiff at the time the writ of sequestration issued. We do not think the record warrants this conclusion. When the writ issued, the automobiles were in the physical possession of the purchasers of them, and beyond the control of J. L. Longino or the Reagan Motor Company. This, in our judgment, is an unanswerable reason in support of the correctness of the conclusion reached by the Court of Appeal. As to the increase of the allowance for attorneys fees, we think the judgment of the district court fairly fixes the value of those fees, and that judgment should be amended only to the extent that the writ of sequestration should be dissolved quoad J. L. Longino, alone, at plaintiff’s cost, and in all other respects it should be affirmed.
Mr. Coleman Lindsey, the judge ad hoe in this case, has written' such a carefully prepared and exhaustive opinion that we take the liberty of incorporating herein his reasons for dissolving the attachment and awarding damages for its wrongful issuance:
“On Motion to Dissolve the Writ of Attachment.
“Plaintiff alleges in its ox-iginal petition that J. L. Longino has mortgaged, assigned or disposed of, or is about to mortgage, assign or dispose of his property, x-ights and credits, or some part thereof, with intent to defraud your petitioner or give an unfair preference to some of his creditors, and that he has converted or is about to convert his property into money or other evidences of debt, with intent to place it beyond the reach of your petitioner and some of his other creditors.”
“Based upon these allegations, plaintiff prayed for and obtained a writ of attachment directing the seizure of the property of Longino in the parishes of Webster, Bossier and Natchitoches. Under this writ considerable, property was seized. In fact, it appears that all' of the property of Mr. Longino’s of every kind was seized except his residence in the City of Minden. The seizure covered his interest in several hundred acres of farm property in the three parishes, all the live stock and farming implements thereon, his automobile, and, by garnishment proceedings, his account with the Eirst National Bank of Blinden, where he was employed as active vice-president. The value of the property seized approximates Twenty Eive Thousand Dollars.
“By a supplemental and amended petition, filed March 5, 1927, plaintiff alleges that on or about December 6, 1926, the Reagan Motors Company, through J. L. Longino, its principal owner and manager, sold all of its assets to the Waller Motor Company of Blinden for a cash consideration of several thousand dollars, and that the Reagan Motors Company ceased to exist on that date.
“The defendant, Longino, comes into Court by motion and prays for the dissolution of the writ ofj attachment on the following grounds:
“1. That the issuance of the writ was premature and had no foundation in law. ■
“2. That the affidavit and amount of bond are insufficient.
“3. That the amount claimed is not certain and definitely fixed.
“4. That the allegations of plaintiff’s petition, forming the basis for the issuance of the writ, are false and untrue.
*439 “5. That the obligation sued on had been extinguished.
“The fourth allegation of the motion formed the principal basis for defendant’s attack on the writ; and it will be considered first.
“The note of evidence adduced on the trial of this motion covers some 240 pages, and it is manifestly impossible to review all of the testimony at this time. It will suffice to discuss the main points on which plaintiff bases its right to the writ of attachment.
“It is shown that J. L. Longino was the sole owner of the Reagan Motors Company, and that he sold all the assets of this company to the Waller Motor Company on December 6, 1926, some three months prior to the date this suit was filed. The consideration for this sale, was the sum of Six Thousand Dollars, represented by a mortgage note for this amount. This note was turned over to the First National Bank of Minden and the proceeds used to pay an unsecured indebtedness of the Reagan. Motors Company at that bank, 'it appearing that this sum was not sufficient to fully liquidate this indebtedness. At the date of that sale the liability of the Reagan Motors Company on the note here sued on was purely contingent. So long as Kelly Sneed paid the installments on his note promptly the note did not become a definite and fixed liability of the Reagan Motors Company or J. L. Longino. When Sneed became delinquent in his payments and plaintiff exercised its option to declare the full amount of the note due and exigible, it is possible that the liability of the Reagan Motors Company ceased to be contingent and became definite and fixed, although the Court does not so hold at this time, but even this situation did not arise until several weeks after the sale of the assets of the Reagan Motors Company. Hence, it does not appear to the Court that the sale was made by Mr. Longino with any intention of defrauding the General Motors Acceptance Corporation or any other creditor of his. There is testimony showing that Longino closed out the business of the Reagan Motors Company because his connection with it interfered with his duties at the bank where he was employed. Possibly the directors of the .bank-objected to his continued participation in the automobile business. Testimony with reference to this point was objected to by defendant in motion when Mr. Longino attempted to explain his reasons for selling the business, the objection being that the sale took place on December 6, 1926, at a time too remote to be considered in connection with the writ of attachment sued out on February 26, 1927. This objection was sustained by the Court, but the same point was covered by the testimony of Mr. Bartee without any objection being made. Inasmuch as this date was fixed by defendant in motion, the Court thereafter endeavored to limit the testimony to acts -of a date subsequent to December 6, 1926. But this effort was not altogether successful, and a number of transactions of an earlier date have, somewhat necessarily, been considered.
“About six weeks prior to the date this suit was filed Mr. Longino and his co-owner, Mr. B. F. Griffith, sold an eighty acre tract of land in Webster Parish to one Isaac Webb. Mr. Longino testified that his share of the proceeds from this sale, some Five Hundred Dollars, was used in further liquidating the indebtedness of the Reagan Motors Company at the First National Bank and in paying small bills of the company around town. It is to be noted that at the time of this sale the liability of the company on the note here sued on was still a contingent liability.
“Longino appears to be the owner of eighty-one shares of the capital stock of the First National Bank of Minden. A iarge part of this stock is pledged with the Exchange National Bank of Shreveport to secure his in *441 debteclness there. While this obligation has been renewed from time to time for ninety-day periods, it appears that the stock was pledged more than a year ago, and possibly before the Reagan Motors Company started in business.
“Certain lands in Bossier Parish were sold by J. L. Longino and his co-owners to Mr. Bible, the deed conveying this property being executed early in December, 1926. However, it was shown that the sale was actually made some months earlier and that Mr. Bible took possession of the property, but for some reason considerable time elapsed before the deed was executed. It appears that the consideration for this sale was a mortgage note, and that this note was delivered to Dr. S. F. Martin, who already held a first mortgage on the property -given by Longino and his co-owners.
“It was shown that Mr. Longino confessed judgment in favor, of his mother for some Ten Thousand Dollars some months prior to the filing of this suit. In fact, it must have been some months prior to the execution of the note here sued on. The Court is not informed as to Mr. Longino’s reasons for confessing judgment in favor of his mother, but he testified that he had been borrowing money from her for a number of years and was indebted to her in a considerable sum. It does not appear that he was indebted to the General Motors Corporation in any amount at the time this confession of judgment was given, and there is nothing to show that he owed any other debts at that time except such as were amply secured.
“Evidence of other sales and mortgages by Mr. Longino was introduced, but they were all at a date some months prior to the filing of this suit, and appear to the Court to have been transactions in the usual course of business, and without any intention on Mr. Longino’s part of defrauding his creditors.
“There is testimony to the effect that-at the time this suit was filed Mr. Longino was insolvent; that he had recently lost heavily in the automobile business in Shreveport; that he refused to give this plaintiff any collateral to secure its claim when called on to do so; and that he told plaintiff’s attorney his- check for Five Dollars would not be honored. Assuming all this! to be true, the Court is not of the opinion that it forms the basis for a writ of attachment. Plaintiff’s attorney testified that Mr. Longino threatened to go into bankruptcy if plaintiff brought suit against him. This Mr. Longino denies. While he might have made some statement with reference to bankruptcy, it is apparent that he was not seriously considering such a step, for the reason that this suit was filed more than two months ago and no notice has come to the attention of the Court that he has availed himself of that right.
“While a number of sales were made and a number of mortgages were given by Mr. Longino within the last year or so, and while some sales were pending at the time this suit was filed, it appears that they were matters arising in the usual course of business. Mr. Longino was and is the owner of considerable real estate which has, for some time, been rather heavily encumbered, and, as he and other witnesses expressed it, he was endeavoring to work himself out of his financial difficulties. The Court sees nothing in the case that evidences an intention on his part, to defraud this plaintiff or any other creditor of his.
“In the case of Winter v. Davis, 48 La. Ann. 260, 19 So. 263, the Supreme Court says: ‘Unless it be shown that there was an intent to defraud, the attachment must fail. The intent to defraud was not shown; moreover, the sales and transactions do not seem to have been made with a well formed design to defraud creditors, however much they may *443 have been sufficient to excite the anxiety of a careful creditor, seeking to avoid a loss.’
“Later, in the same case, the Court says: ‘It is not evident that the intention of the defendant was to place his property beyond the reach of his creditors, or to dispose of it so as to give an unfair preference. These are essentials to sustain an attachment. * * ‡ The condition of defendant’s business, we have already stated, was such as to give the average creditor concern, and some anxiety, particularly as the amount was large and defendant’s ability to pay uncertain. He had a large stock, and possibly he had reason to think, by adopting the course he did, he would succeed in overcoming his financial troubles. There is uncontradicted evidence of record in support of that theory.’
“The reasoning in the case just cited is peculiarly- applicable to the facts in the case now before the Court. It appears that Mr. Longino suffered considerable losses in some of his business ventures. That he-made some mistakes, as all business men do, he would, no doubt, admit. But- errors of business judgment, and financial losses do not, to again quote from the Winter Case,constitute the fraudem legis denounced by the statute.
“Finding no basis for the writ of attachment, it will be dissolved.
“Having dissolved the writ for the above reasons, it does not become necessary to pass on the other points raised in the motion.
“Plaintiff claims damages for the. wrongful issuance of the writ.
“The judgment dissolving the writ as having wrongfully issued is res judicata on the right to damages, and the sole question, remaining is the quantum. See McDaniel & Co. v. Gardner & Co., 34 La. Ann. 341.
“Damages claimed by plaintiff in motion aggregate Fifty One Thousand Five Hundred Dollars, which claim he sets up by reconvention, and in which amount he prays for judgment against the General Motors Acceptance Corporation. This claim is itemized as follows :
1. For humiliation, mortification and injury to his social standing................... $10,000 00
2. For injury to his credit and financial standing ................................. 20,000 00
3. Damage caused by garnishment in depriving him of funds for the support and maintenance of his family........ 10,000 00
4. Doss in farm operations.................. 5,000 00
5. Doss of profit on sale of lands........... 5,000 00
6. Attorney’s fees for dissolution of writ.. 1,500 00
 “Before passing on the quantum of damages to be awarded plaintiff in motion, it is necessary to! first consider another point, that is; was the plaintiff prompted by malice in procuring the writ of attachment? The Court has reached the conclusion that it was not. Such action was taken upon the advice of able and experienced counsel, and when it might reasonably have appeared that such a step was necessary for the protection of plaintiff’s rights.
“In the case of McDaniel & Co. v. Gardner & Co., supra, the Court says: ‘The writ may have improvidently issued, but the attaching creditors may have reasonably believed that they were entitled to it, particularly as it was shown, that in resorting to the proceeding, they acted under the advice of counsel. The plaintiffs are, however, entitled to the actual damage caused by the writ; and we shall proceed, under the evidence, to make an estimate of the damage, a task always difficult in the face of conflicting testimony, wliich generally attends cases of| this kind.’
“While concluding that the plaintiff in motion is entitled to recover the actual damages suffered in this case, the Court is mindful of the extreme difficulty to be experienced in fixing the amount with any certainty. But if Courts were excused from passing on cases whenever difficult and unpleasant features confronted them, few cases would ever be decided, and the freedom of the Courts, guaranteed to every man by our Constitution, would become a meáningless declaration.
*445 “Our Suprema Court said, in the case of Wall v. Hardwood Manufacturing Co., 127 La. 959, 54 So. 300: ‘The actual damages suffered from the attachment as the result of the disturbance to defendant’s business and the injury to its credit cannot be fixed with any certainty. This, however, is no reason why no damages at all should be allowed, when, most unquestionably, some damages were suffered.’
“Where ai plaintiff sues out a writ of attachment in the honest belief that it is necessary for 'the protection of its rights, it seems rather unfortunate that it must be held liable for the payment of damages. But the writ of attachment is an extremely harsh remedy, and, when a party makes use of this powerful legal weapon he must be ready to respond in damages if it be found that the writ was wrongfully used. See Hathaway v. Winn, 4 La. App. 588.
“Defendant in motion has cited abundant authority to the effect that such damage as plaintiff in motion has suffered, other than attorney’s fees for the dissolution of the writ, was caused by the filing of the suit, which it had a perfect right to file, and not by reason of the writ of attachment. The Court cannot subscribe to that theory. It is inconceivable that the mere filing of a suit on a chattel mortgage note for Two Hundred and Thirty One Dollars, making the endorser a party thereto, would damage the endorser to any appreciable extent. The seizure of Mr. Longino’s real estate and other farm property; the seizure of his bank account by garnishment process directed to the bank in which he was employed as active vice-president; and the seizure of his private automobile, used by himself and his family, resulted, not from the suit, but from the writ of attachment. I-Iis financial condition was well known to the officers and directors of the bank where he was employed, to his business associates, and to those from whom he obtained credit. But' they had yet to hear him charged with fraud. The suit itself did not charge him with fraud; the 'allegations forming the basis for the writ of attachment did that.
“In considering these various points, particularly with reference to the various items in the claim of plaintiff in motion on which damages should be allowed, and the quantum thereof, the Court has examined a great number of cases decided by our Supreme Court. Without citing all of them, or quoting from them just at this time, in addition to those already cited, attention isi called to the following: Hernsheim & Bro. v. Levy, 32 La. Ann. 340; Byrne & Co. v. Gardner & Co., 33 La. Ann. 6; Seeligson & Co. v. Rigmaiden & Co., 37 La. Ann. 722; Chaffe et al. v. Mackenzie, 43 La. Ann. 1062, 10 So. 369; Mitchell v. Murphy, 131 La. 1040, 60 So. 677.
“Cases already cited which bear upon these points are: McDaniel & Co. v. Gardner & Co., 34 La. Ann. 341; Winter v. Davis, 48 La. Ann. 260, 19 So. 263; Wall v. Hardwood Mfg. Co., 127 La. 959, 54 So. 300; Hathaway v. Winn, 4 La. App. 588.
“That plaintiff in motion is entitled to recover something for humiliation, mortification and injury to his social standing, as set up in the first item of his claim, the Court has no doubt.
“The Byrne Case, supra, is authority on the point that he is not confined to the proof of actual pecuniary loss. In that case, although the Court found that no malice was shown, mortification and vexation were held to be proper subjects for the consideration of the jury in estimating'damages. See, also, the Hathaway Case, supra. Bearing in mind that the dissolution of this writ will remove the causes for humiliation and mortification, and will wipe out such stain as might have been placed on the social standing of plaintiff in motion; and following the decisions of our higher courts on this point, the recovery *447 under this item is fixed at One Hundred Dollars.
“Plaintiff in motion next claims damages for injury to his credit and financial standing. The evidence shows that his account with the bank where he was employed as active vice-president was attached. His bond as ah officer of the bank, in the sum of Ten Thousand Dollars, was cancelled by the bonding company, effective on or about April 9, 1927. Mr. J. L. Mclnnis, the local agent of the bonding company, testified that when this suit was filed he forwarded his company a copy of plaintiff’s petition, without comment, and that he received an order for the cancellation of this bond immediately thereafter. It is argued that the filing of this suit caused the cancellation of the bond. The Court cannot so view the matter. Can it be said that the filing of a suit against another party on a mortgage note for Two Hundred Thirty One Dollars, making Mr. Longino’s company, the endorser thereon, a party thereto, would have resulted in the cancellation of his bond'! The Court thinks not. If an ordinary suit had been filed on this note it is highly improbable that Mr. Mclnnis would have given any attention to the matter. But the allegations of fraud made against Mr. Longino, and the seizure of all his property, made it the duty of Mr. Mclnnis to notify the company he represents, and, assuming that the allegations were true, the company was obliged to cancel the bond. Mr. Mclnnis testified that it will be difficult for Mr. Longino to secure another surety bond from a bonding company because of this cancellation. He states that his high opinion of Mr. Longino’s integrity and ability has not suffered by reason of these proceedings, and that a bond can be secured from his company, in his opinion, more easily than from another. The Court is of the opinion that Mr. Longino can secure another bond. The directors and officers of the bank where he is employed have not lost any of their confidence in him. Mr. Bartee, Cashier of a bank that extends him credit from time to time, states that his faith in Mr. Longino’s integrity and ability has not been shaken. And, since the dissolution of this writ will clear these matters up somewhat completely, the Court does not believe plaintiff in motion has been damaged to the extent claimed. 'Following again the decisions of our higher courts, the recovery under this item is fixed at Five Hundred Dollars.
“Plaintiff in motion claims that the garnishment proceedings damaged him in, the sum of Ten Thousand Dollars by depriving him of funds for support of his family. No proof was offered on this point, and the Court is not inclined to allow a recovery thereunder. The demands of plaintiff in motion under this item are rejected.
“He next claims damages for loss in farm operations. It appears that he owned an interest in several hundred acres of farm lands; that all of this property, together with all live stock and farming implements on the premises, was seized; and that no farming operations can be carried on. No testimony is needed to convince the Court that if a farm is to be operated a large part of the work of preparing the land and planting the crop must be done during the months of March and April, the period during which this property has been under seizure. It is true that in some years farmers lose money, but taking the average experience of several years they make money. Mr. Longino testified that about one hundred bales of cotton were produced on this property in 1926. It is not exactly clear what interest he owns in the various tracts of farm lands, neither is it shown on what basis his farms were operated last year. The Court is under the impression, from the evidence in the case, that he owns a one-half interest in this property. Assuming that he received one-fourth *449 of the crop as rent, he would have received approximately twelve bales of cotton last year, to say nothing of his interest in other crops. At an average price of fifteen cents for this cotton his profit was approximately Nine Hundred Dollars. This estimate may be too high and it may be too low, but it is the only figure at which the Court is able to arrive. But with the dissolution of this writ plaintiff in motion can still carry on farming operations of some kind this year, and his damage will not be the full amount of his profit for last year. The recovery under this item is fixed at Two Hundred Fifty Dollars.
"The next item in the claim for damages is for the loss of profits on the sale of lands. Mr. Longino testified that this attachment blocked the sale of two tracts of land, one of approximately eighty acres, and the other one hundred seventy-seven acres. The testimony of Dr. L. Longino and of Mr.’ J. L. Mclnnis, corroborates his testimony. Plaintiff in motion testified that the profit on the first tract would have been Twenty Dollars per acre, and on the second tract Thirty Dollars per acre. It appears that he owns a one-half interest in the two tracts, making his profit, according to his testimony, some Thirty Four Hundred Dollars. The Court thinks his estimate is too high. Even assuming that it is not, the mere attachment of this property has not caused it to decrease in value. It is entirely probable that it can still be sold for this price, or possibly more. However, there is no positive assurance of this, and Mr. Longino states that his plans for working out his financial affairs have been disrupted by his inability to consummate these two sales. He has certainly been damaged to some extent in this connection by the issuance of the writ of attachment, and the recovery under this item is fixed at Two Hundred Fifty Dollars.
“The last item in the claim for damages is for attorney’s fees for the dissolution 'of the writ. It is admitted that such fees are a proper item of damages. There is abundant authority on that point. The claim is for Fifteen Hundred Dollars. Mr. D. D. Stewart, Jr., an attorney at this bar, testified that from One Hundred to One Hundred Fifty Dollars is a proper fee for dissolving a writ of attachment. He bases his estimate on an ordinary case, and in an ordinary case the Court would accept his estimate. But this .is beyond an ordinary case. The trial of this motion consumed practically two full days. Numerous witnesses were called and examined. The voluminous record speaks for itself on this point. About one-half day was spent in oral argument on the motion, after which briefs were prepared. Considering that property valued at approximately Twenty Five Thousand Dollars was seized under this writ; considering the many issues involved in the trial of this motion; the time and labor expended in the trial, argument and briefing of the case by the three able attorneys for plaintiff in motion, the Court feels that a fee of Four Hundred Dollars is exceedingly reasonable, and the recovery hereunder is fixed accordingly.”
For these reasons the judgment of the Court of Appeal dissolving the writ of sequestration- quoad J. L. Longino should be affirmed, but in all other respects the judgment of the district court should be the final judgment of this court.
It is therefore decreed that the judgment of the Court of Appeal be, and it is hereby, affirmed in so far as it dismisses the writ of sequestration herein quoad J. L. Longino, and in all other respects that the judgment of the district court be affirmed and made the final judgment of this court. As this decree substantially reduces the amount which the Court of Appeal awarded the appellee J. L. Longino, it is further decreed that J. L. Longino pay the costs in this court and that the *451 General Motors Acceptance Corporation pay the costs in the lower courts.